Filed 10/25/18

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>∗</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H045175 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS162018) |
| v. | |
| RALPH ACOSTA, JR., | |
| Defendant and Appellant. | |

Ralph Acosta, Jr., appeals aspects of his sentence for his convictions for committing a lewd or lascivious act on a child under the age of 14 and for contacting a minor with the intent to commit a sexual offense. He contends that: (1) the sentence imposed for contacting a minor with the intent to commit a sexual offense should have been stayed pursuant to Penal Code section 654[1] because he harbored the same intent and objective for both crimes of conviction; (2) his trial counsel was constitutionally ineffective for failing to object to the sexual offender fines imposed by the trial court; and (3) the trial court lacked authority to issue a protective order forbidding him from contacting the sister of the named victim of his crimes.

In the unpublished portion of our decision, we conclude that the trial court correctly imposed sentences for each count of conviction without staying the punishment

---

∗ Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A and II.C.

[1] All further statutory references are to the Penal Code unless otherwise specified.

for either crime and had authority to issue a protective order barring Acosta from having contact with Jane Doe's sister, Jane Doe 2, under section 136.2, subdivision (i)(1).

In the published portion of our decision, we determine that Acosta has not demonstrated that his trial counsel was constitutionally ineffective for failing to request a hearing on Acosta's ability to pay the sexual offender fines. Nevertheless, we encourage trial courts to inquire into a defendant's financial circumstances when imposing a sexual offender fine, even in the absence of a request by the defendant.

## I.   FACTS AND PROCEDURAL BACKGROUND

Eight-year-old Jane Doe was a student at the elementary school where her mother, M.S.,[2] worked as a teacher. Jane Doe and her five-year-old sister were playing outside after school while M.S. worked in her classroom. The girls got tired and went back inside the school.

Jane Doe first saw Acosta, whom she did not know, standing outside the school office. Acosta told Jane Doe to " '[c]ome here,' " and she followed him into a small room near the school office. Acosta and Jane Doe then exited the room together, and Jane Doe followed Acosta down several hallways.

Acosta sat down on a bench and again told Jane Doe to " '[c]ome here.' " Acosta picked Jane Doe up by her torso, put her on his lap, and touched her vagina.[3] After Acosta touched Jane Doe's vagina, she stood up and got off his lap.

Acosta went to a door leading outside to the school playground and gestured to Jane Doe to follow him. Jane Doe followed Acosta to the door but then ran to her mother's classroom. Jane Doe next saw Acosta outside of her mother's classroom. Acosta again gestured to Jane Doe with his hand to go to him. Jane Doe refused by shaking her finger back and forth. Jane Doe's sister was present during all of Jane Doe's

---

[2]   We refer to Jane Doe's mother by her initials to protect Jane Doe's privacy interests.  (See California Rules of Court, rule 8.90(b)(11).)

[3]   Jane Doe referred to her vagina as her "private part."

interactions with Acosta. Jane Doe's sister discussed details of the incident with her mother the following day. Acosta did not touch Jane Doe's sister.

An information charged Acosta with committing a lewd or lascivious act on a child under the age of 14 (§ 288, subd. (a) (count 1)) and contacting a minor with the intent to commit a sexual offense (§ 288.3, subd. (a) (count 2)). The information alleged in count 2 that Acosta contacted Jane Doe with the intent "to commit an offense specified in Penal Code Section 273a and/or 288." The information listed Jane Doe[4] as the sole victim and made no reference to her sister.

Acosta waived his right to a jury trial. Following a bench trial, the trial court found him guilty of both crimes. With respect to the offense of contacting a minor with the intent to commit a sexual offense, the court found "the People have proven their case beyond a reasonable doubt as to Count 2, Penal Code [section] 288.3[, subdivision] (a), under the theory that the defendant intended to commit Penal Code [section] 288." The court stated that it did "not find sufficient evidence as to the alternate theory that [Acosta] intended to commit [a violation of section] 273a."

The trial court sentenced Acosta to eight years on count 1 for the violation of section 288, subdivision (a). The court imposed a concurrent sentence of four years on count 2 for the violation of section 288.3. The court stated, "I do believe that under [the] circumstances the 288.3 was really almost something that necessarily has to happen to commit the 288, [subdivision] (a). So that's a concurrent term." The prosecutor and defense counsel agreed that a concurrent term was appropriate for the section 288.3 conviction. Neither the court, the prosecutor, defense counsel, nor the probation officer raised section 654's prohibition against double punishment regarding Acosta's crimes.

Among other fees and fines assessed during Acosta's sentencing, the trial court imposed two fines pursuant to section 290.3, the first for $300 and the second for $500,

---

[4] The information referred to Jane Doe as "Jane Doe #1."

as well as related penalty assessments and administrative fees. The court made no explicit findings about Acosta's ability to pay the section 290.3 fines. Acosta did not ask for a hearing on his ability to pay these fines and did not object to their imposition.

At the sentencing hearing, the prosecutor read a letter written by M.S. M.S. referenced the nightmares and fears that both her daughters continued to experience as a consequence of Acosta's actions. The prosecutor argued that "there really were two victims here . . . he did this in front of two girls." The trial court asked the prosecutor whether he had listed both Jane Doe and her sister, whom the court referred to as Jane Doe 2, on the criminal protective order "given your argument at sentencing." The prosecutor responded that he had, and the court issued a 10-year criminal protective order listing "Jane Doe 1 & 2" as the protected persons. Acosta did not object to the inclusion of Jane Doe 2 in the protective order.

## II.  DISCUSSION

Acosta challenges three aspects of his sentence. He argues that section 654 precluded the imposition of an unstayed sentence on count 2 in light of his sentence on count 1. He contends that his trial counsel was ineffective for failing to object to the sexual offender fines imposed pursuant to section 290.3. Finally, he states that the trial court lacked authority to issue a criminal protective order for Jane Doe's sister. We discuss each claim in turn.

### A.    *Section 654 and Double Punishment*

Acosta argues that the trial court erred by failing to stay the punishment on count 2. He maintains that he had the same objective and intent for both counts 1 and 2, and section 654 bars the imposition of separate punishment under those circumstances.

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Section 654's prohibition

4

on multiple punishment applies to crimes that arise from a single, indivisible course of conduct. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) Whether crimes arise from an indivisible course of conduct turns on the perpetrator's intent and objective. (*Ibid.*) "If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, overruled in part on another ground in *People v. Correa* (2012) 54 Cal.4th 331, 341.)

If a trial court erroneously fails to stay the execution of a sentence pursuant to section 654, the court has acted in excess of its jurisdiction, and a reviewing court must correct the error on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17 (*Scott*).) A defendant's "failure . . . to object on this basis in the trial court does not forfeit the issue." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.)

Whether a defendant harbored a single intent—and thus a single objective—is a factual question; the applicability of section 654 to settled facts is a question of law. (*Harrison, supra,* 48 Cal.3d at p. 335.) Where, as here, the trial court makes no explicit factual findings with respect to the application of section 654 and does not stay any aspect of the sentence, we must affirm the trial court's determination that section 654 does not apply if substantial evidence supports its implicit factual findings. (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045.) We presume the existence of every fact the trial court could reasonably determine from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Acosta seizes on the trial court's statement at sentencing that "the 288.3 was really almost something that necessarily has to happen to commit the 288, [subdivision] (a)," to argue that section 654 requires that the punishment for count 2 be stayed. However, when it sentenced Acosta to eight years on count 1 and four years on count 2, the court

elected not to stay either sentence.[5]  By declining to stay the sentence imposed on either count pursuant to section 654, the court implicitly found that Acosta harbored multiple intents for counts 1 and 2.  The question for us is whether substantial evidence supports this conclusion.

Turning first to Acosta's directive to Jane Doe to " '[c]ome here' " that resulted in her sitting on his lap where he then touched her vagina, Acosta is undoubtedly correct that those acts sprang from a single intent and objective.  If those were the only acts forming the basis for conviction on counts 1 and 2, then Acosta's argument that the trial court should have stayed the punishment for count 2 would prevail.  (Cf. *People v. Medelez* (2016) 2 Cal.App.5th 659, 663-664 (*Medelez*) [holding unstayed punishment for both a single act of luring to commit oral copulation and for attempted oral copulation could not be imposed under section 654 because the crimes were based on a single intent and objective].)

However, Acosta gestured to Jane Doe to " '[c]ome here' " at least two times after the luring that resulted in his touching her vagina.  As the prosecutor argued in his closing argument, "we really have multiple times he's communicating with her to achieve his desires.  We have it in [the] foyer where he makes the hand signal and she comes in.  We have it . . . . just before the exterior door and down the long hallway to mom's classroom where he asks her to come outside."  The relevant question is whether substantial evidence supports the trial court's implicit finding that Acosta's subsequent gestures to bring Jane Doe to him, presumably so that he could again lasciviously touch her, were made pursuant to an intent and objective separate from the first luring and touching.

That Acosta's gestures to Jane Doe occurred in a short period of time is of no moment.  "[I]f the evidence discloses that a defendant entertained multiple criminal

    **5**  It is irrelevant to the multiple punishment analysis that the sentences were concurrent rather than consecutive.  (*In re Wright* (1967) 65 Cal.2d 650, 655.)

6

objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*People v. Perez* (1979) 23 Cal.3d 545, 551.)  In sex offense cases, section 654 is construed narrowly because a defendant who commits multiple sexual acts is "substantially more culpable" than an individual who commits a single offense.  (*Id.* at p. 553.)  If, in a single encounter, none of the sex offenses were committed as a means of committing any other, none facilitated any other, and none were incidental to any other, then section 654 does not apply.  (*Harrison, supra,* 48 Cal.3d at p. 336; accord, *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006 [noting the 654 rule "is different in sex crime cases . . . [e]ven where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished"].)  For example, "[e]ach individual act that meets the requirements of section 288 can result in a 'new and separate' statutory violation." (*Scott, supra*, 9 Cal.4th at pp. 346-347.)  "Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed." (*Id.* at p. 344, fn. 6.)

There is substantial evidence supporting the trial court's implicit finding that Acosta, having touched Jane Doe's vagina one time after telling her to come to him, formed a new intent and objective to touch her a second time.  Acosta manifested this intention when he gestured to Jane Doe at the door leading to the playground and then once again outside of her mother's classroom.  These subsequent acts by Acosta were not incidental to his prior touching of Jane Doe; nor did they facilitate or serve as a means of committing the prior violation of section 288, subdivision (a) charged in count 1.[6]  The

---

[6] We note that our analysis may well have been different had all of the acts constituting Acosta's violation of section 288.3 occurred prior to his commission of the section 288, subdivision (a) crime.  (See *Medelez, supra*, 2 Cal.App.5th at pp. 663-664.)

trial court did not err when it implicitly found that Acosta harbored multiple intents and objectives for his crimes against Jane Doe and concluded that section 654 did not apply.

> B.       *Imposition of the Section 290.3 Sex Offender Fines*

Acosta's convictions of section 288, subdivision (a) and section 288.3 triggered the imposition of sex offender fines for each count pursuant to section 290.3.[7]  That section requires that a defendant convicted of those and other similar offenses "be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (§ 290.3, subd. (a).)

Pursuant to this provision, the trial court ordered fines of $300 and $500, plus penalty assessments and administrative fees, totaling $3,440.  Acosta did not object at sentencing to the imposition of these fines; nor did he assert that he did not have the ability to pay them.  As Acosta concedes, by failing to object to these fines at sentencing, he has waived any claim on appeal that the trial court improperly imposed them.  (*People v. Walz* (2008) 160 Cal.App.4th 1364, 1369.)  However, Acosta maintains that we should remand his case to the trial court for a hearing on his ability to pay because his trial counsel was constitutionally ineffective for failing to object to the fines.

The test for ineffective assistance of counsel is a demanding one.  It requires that a criminal defendant establish both that his counsel's performance was deficient and that he suffered prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  Acosta bears the burden of demonstrating by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness.  (*In re Thomas* (2006) 37 Cal.4th 1249, 1257.)  Ineffective assistance of counsel is particularly difficult to

---

[7]  The trial court correctly imposed a section 290.3 fine for each count of conviction.  (*People v. O'Neal* (2004) 122 Cal.App.4th 817, 822.)

demonstrate on direct appeal, where we are limited to the record from the trial court. "The appellate record . . . rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) " 'Unless a defendant establishes to the contrary, we shall presume that "counsel's" performance fell within the wide range of professional competence.' " (*Ibid.*) " 'If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected . . . "unless there simply could be no satisfactory explanation." ' " (*Ibid.*)

Acosta contends that "it is clearly evident" that he could not pay the fines and penalty assessments imposed under section 290.3, subdivision (a), and "[i]t cannot be said that counsel might have had some tactical reason to refrain from objecting." Moreover, Acosta argues that he suffered prejudice from his counsel's failure to object because there is a "reasonable probability" that the trial court would not have imposed the fines had counsel objected.

We reject both contentions. We cannot say that, on the record before us, there is no satisfactory explanation for defense counsel's failure to object to the sexual offender fines. The probation report prepared for Acosta's sentencing stated that "[i]t is anticipated that defendant will have means to pay for any Court ordered fine or fee." Defense counsel may have determined that he would be unable to establish otherwise. Acosta was 41 years old at the time of sentencing. Although the probation report disclosed that Acosta had a limited work history, he had employment plans that he intended to pursue after serving his sentence. Acosta's criminal history was relatively minor. Trial counsel may have determined that Acosta would be able to work in the future or would have access to assets or income not mentioned in the probation report sufficient to pay the sex offender fines. Further, the probation officer's conclusion that

9

Acosta would have an ability to pay also significantly weakens Acosta's claim of prejudice, which assumes that the trial court would not have ordered the fines if defense counsel had objected to their imposition.

More generally, we recognize that a defense counsel's decision whether to object to the imposition of fines and fees can encompass factors beyond a defendant's financial circumstances, especially in serious cases involving potentially long prison sentences. Where, as here, the trial court has observed that "[t]he defendant brazenly breezed onto campus, sought out a child, and molested her in front of her sister," defense counsel may make a tactical decision that it is not in his or her client's interest to object to particular fines. We cannot speculate, given the absence of information before us, what led to defense counsel's decision not to object, but a myopic focus on Acosta's financial circumstances that neglects any of the other factors at play in a sentencing hearing may not provide an accurate picture of counsel's strategic calculus.

In light of these considerations and the reality that many felony defendants are indigent, it is the better practice for the trial court to independently inquire at sentencing about the defendant's ability to pay a sexual offender fine irrespective of whether the defendant—or his attorney—requests that the court do so. We recognize that the thicket of fines and fees that apply in a felony case and the varying legal standards that adhere to each complicate the process of pronouncing sentence. However, we urge trial courts to inquire sua sponte into a defendant's financial circumstances before imposing a sexual offender fine.

We emphasize that we do not hold that a trial court is obligated to inquire into a defendant's ability to pay a sex offender fine absent the defendant's request. (See *People v. McMahan* (1992) 3 Cal.App.4th 740, 749-750 (*McMahan*) [reasoning "[i]t should be incumbent upon the defendant to affirmatively argue against application of the fine and demonstrate why it should not be imposed," in part because "the most knowledgeable person regarding the defendant's ability to pay would be the defendant himself"].)

However, we note that the amount of the section 290.3 fine has increased threefold since the issuance of the *McMahan* decision. (*Id.* at p. 749.) With the addition of penalty assessments and administrative fees, the section 290.3 assessment alone can amount to thousands of dollars, and there are other mandatory fines and fees levied in a typical felony sentencing. (See, e.g., §§ 1202.4, subd. (b); 1465.8.) Moreover, we are confident that trial courts can inquire expeditiously into a defendant's financial circumstances such that the hearing need not be "significantly time-consuming." (Cf. *McMahan*, *supra*, at p. 749.)

Nonetheless, Acosta has not demonstrated that his trial counsel was constitutionally deficient by failing to object to the trial court's imposition of sex offender fines. We reject his appeal on this ground.

C. *The Criminal Protective Order for Jane Doe 2*

Acosta asserts that the trial court committed error when it issued a criminal protective order pursuant to section 136.2, subdivision (i)(1) protecting Jane Doe's sister, Jane Doe 2.[8] Acosta contends that Jane Doe 2, who observed the crimes against Jane Doe but whom Acosta did not touch or otherwise verbally communicate with, does not qualify as a "victim" within the meaning of the statute. We disagree with Acosta and affirm the trial court's issuance of a protective order for Jane Doe 2.

" ' "Issues of statutory interpretation are questions of law subject to our independent or de novo review." ' " (*People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).) "With respect to the issuance of a legally authorized criminal protective order, " '[w]e imply all findings necessary to support the judgment, and our review is limited to

---

[8] Although Acosta did not object to the trial court's issuance of the protective order, he has not forfeited the claim, which turns on whether the court had jurisdiction at sentencing to issue the order. (See *People v. Ponce* (2009) 173 Cal.App.4th 378, 381; but see *People v. Race* (2017) 18 Cal.App.5th 211, 219, fn. 4.) The People do not argue that Acosta has waived this claim.

11

whether there is substantial evidence in the record to support these implied findings.' " ' " (*Ibid.*)

At the time of Acosta's sentencing in September 2017, section 136.2, subdivision (i)(1) stated in relevant part: "In all cases in which a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 or in Section 6211 of the Family Code, a violation of Section 261, 261.5, or 262, or any crime that requires the defendant to register pursuant to subdivision (c) of Section 290,[9] the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim. The order may be valid for up to 10 years, as determined by the court."

As the then-operative text of section 136.2, subdivision (i)(1) makes clear, it applies only to prohibit a defendant's contact with "the victim." (*People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211 (*Delarosarauda*).) "Victim," as used in section 136.2, subdivision (i)(1), "means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated." (§ 136(3); *Delarosarauda*, *supra*, at p. 211.)

"Under the plain language of section 136.2, subdivision (i)(1), a postconviction protective order is limited to restraining the defendant from contact with a 'victim,' that is, a 'natural person with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated.'" (*Delarosarauda*, *supra*, 227 Cal.App.4th at p. 211; see also *Race*, *supra*, 18 Cal.App.5th at p. 219 [construing the term "broadly to include any individual against whom there is 'some evidence' from

---

[9] Section 290, subdivision (c) states, in relevant part: "The following persons shall register: Any person who, since July 1, 1944, has been or is hereafter convicted in any court in this state or in any federal or military court of a violation of . . . Section 266j, 267, 269, 285, 286, 288, 288a, 288.3, 288.4, 288.5, 288.7, 289 . . . ."

which the court could find the defendant had committed or attempted to commit some harm within the household"]; accord, *People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 466 [noting "[w]hen enacting section 136.2(i)(1) to permit 10-year postconviction protective orders in domestic violence cases, the Legislature was aware of this broad definition of victim generally applicable to section 136.2 protective orders, and it did not enact a provision narrowing its scope for purposes of a postconviction domestic violence protective order"].) Thus, the trial court properly included Jane Doe 2 in the protective order if there is substantial evidence in the record to support the trial court's implied finding that there was reason to believe that Acosta perpetrated or attempted to perpetrate a crime against her. (See *Race*, *supra*, at p. 217; *Delarosarauda*, *supra*, at p. 211.)

We determine that the trial record supports the issuance of the order protecting Jane Doe 2. Although the trial court did not specify the factual basis for its issuance of the protective order for Jane Doe 2, it asked the prosecutor whether she was included in the proposed order "given [the prosecutor's] argument at sentencing." The prosecutor had argued that "there were really two victims here" because Acosta "did this in front of" both girls. Jane Doe testified at trial that Jane Doe 2, aged five, witnessed Acosta put Jane Doe on his lap and touch Jane Doe's vagina. In addition, it was Jane Doe 2 who alerted M.S. that Jane Doe had been assaulted, telling M.S. that a man had touched Jane Doe in her " 'private part.' " M.S.'s sentencing letter described the significant fear and anxiety that both Jane Doe 1 and Jane Doe 2 continued to experience from Acosta's actions. We conclude that the trial court impliedly found there was reason to believe Acosta willfully inflicted unjustifiable mental suffering on Jane Doe 2 or willfully caused or permitted Jane Doe 2 to be placed in a situation where her health was endangered, in violation of section 273a, subdivision (b).[10] Substantial evidence supports the trial court's implied finding.

---

[10] We are aware that, at the conclusion of trial, the trial court determined that there was "not . . . sufficient evidence" for it to find "beyond a reasonable doubt" that Acosta

13

Because there is sufficient evidence in the record establishing a "reason to believe that a[] crime . . . [was] perpetrated" against Jane Doe 2 by Acosta, the trial court had the authority to issue the order protecting her pursuant to section 136.2, subdivision (i)(1). (§§ 136(3), 136.2, subd. (i)(1).) We affirm the trial court's inclusion of Jane Doe 2 in the protective order.

## DISPOSITION

The judgment is affirmed.

---

was guilty of violating section 288.3, subdivision (a) under the theory that he contacted Jane Doe with the intent to commit a violation of section 273a, willful harm or injury to a child. In contrast to the beyond-a-reasonable-doubt standard required for criminal convictions (*In re Winship* (1970) 397 U.S. 358, 364), the trial court's decision to include Jane Doe 2 in the protective order was based on its implied finding that there was "reason to believe" Acosta perpetrated or attempted to perpetrate any crime against Jane Doe 2 (see § 136(3); *Delarosarauda*, *supra*, 227 Cal.App.4th at p. 211). "We presume, in the absence of evidence to the contrary, that the trial court knew and applied the correct statutory and case law." (*People v. Therman* (2015) 236 Cal.App.4th 1276, 1279.)

_____
DANNER, J.

WE CONCUR:


_____
GREENWOOD, P.J.




_____
GROVER, J.




*People v. Acosta*
**H045175**

Trial Court: Monterey County
Superior Court No.: SS162018

Trial Judge: The Honorable Andrew G. Liu

Attorney for Defendant and Appellant
Ralph Acosta, Jr.

Lori A. Quick
under appointment by the Court of
Appeal for Appellant

Attorneys for Plaintiff and Respondent
The People:

Xavier Becerra
Attorney General

Gerald A. Engler
Chief Assistant Attorney General

Jeffrey M. Laurence
Senior Assistant Attorney General

Catherine A. Rivlin
Supervising Deputy Attorney General

Bruce M. Slavin
Deputy Attorney General

*People v. Acosta*
**H045175**

**Case Number H045175**
**Date of Filing 10/25/2018**
**Partially Published**
**Majority Author Danner**
**Concurring Author None**
**Dissenting Author None**
**Assigned Attorney By the Court**
**Trial Judge Liu**